IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLINTON N. BRASHEAR,

    Plaintiff,

v.                                                    CV 09-0761 MV/WPL

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Clinton N. Brashear's motion and memorandum in support of reversing a decision by the Commissioner of Social Security. (Doc. 16.) For the reasons explained below, I recommend that the motion be granted.

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Administration has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920. At the first four steps, the claimant must show that he is not working at a substantial gainful activity, that he has an impairment that is severe enough to significantly limit his ability to do basic work activities, and either that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or that he is unable to perform the work he has done in the past. At the fifth step, the Commissioner must show that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

**FACTUAL AND PROCEDURAL BACKGROUND**

Brashear's primary care provider is Jina Vick, a certified nurse practitioner. Her progress notes dating back to November 2004 show that Brashear suffered from a drinking problem, anxiety, and post-traumatic stress disorder. (Administrative Record (AR) 236, 242, 244, 245, 251, 265, 268, 276.) The earlier progress notes mention depression on a few occasions. (AR 247, 261-62.)

In July 2007, Mental Health Resources did an assessment on Brashear and found him to exhibit symptoms of anxiety and depression. (AR 215-23.) He was diagnosed with "Mixed Anxiety-Depressive Disorder." (AR 214.)

On August 29, 2007, Dr. Richard Fink performed a consultative examination. (AR 186.) According to Fink, Brashear had been incarcerated about seven times. All of the incarcerations were alcohol related. Brashear told Fink that he had never been arrested for a violent act, but had been incarcerated for crimes such as possession of a controlled substance, forging checks, and driving while intoxicated. (*Id.*) Brashear's PTSD symptoms were the result of assaults that occurred during his first incarceration. (AR 187.) Even before that, he suffered from depression and social anxiety. Brashear can only sleep a few hours a night because "It just seems like I ought to be awake in case something happens." (*Id.*) He lives with his mother and is able to do some of the cooking and housework. He goes shopping with his mother, but just waits for her in the car because he feels uncomfortable in the store. Fink concluded that Brashear has PTSD, chronic depression, social phobia, and anxiety. (AR 188.) He determined that although Brashear's ability to understand detailed or complex instructions appears to be impaired, his ability to understand short, simple instructions is not. His ability to sustain concentration is no more than mildly impaired. His ability for social interaction is impaired by his PTSD and social anxiety. "In particular he has difficulty interacting with people and would likely have problems with supervisors." (*Id.*) His ability to react

to changes in the work place and to be aware of normal hazards and react appropriately are not significantly impaired. (*Id.*)

On September 6, 2007, Dr. Gabaldon completed a mental residual functional capacity assessment (mental RFC) form. He noted no marked limitations, but found the following moderate limitations:

-maintaining attention and concentration for extended periods
-working in coordination with or proximity to others without being distracted by them
-making simple work-related decisions
-interacting appropriately with the general public
-accepting instructions and responding appropriately to criticism from supervisors
-getting along with co-workers or peers.

(AR 190-91.) Gabaldon also completed a psychiatric review technique (PRT) form, which reflects that Brashear has an anxiety-related disorder. (AR 194.) The PRT form states that Brashear has mild limitations in activities of daily living and in maintaining concentration, persistence, or pace and a moderate limitation in maintaining social functioning. There was insufficient evidence to determine whether Brashear experienced extended episodes of decompensation. (AR 204.)

In May 2008, a neighbor took Brashear to Vick because he was "really drunk" and had been drinking a fifth of whisky a day. (AR 235.) Brashear saw Vick again on June 15, 2008, and she noted that he had "2 major ETOH spells." (AR 234.) The progress notes from this visit indicate that Vick considered Brashear disabled due to anxiety and alcohol abuse. The next day, Vick completed a mental RFC assessment form. She found marked limitations in the following areas:

-remembering locations and work-like procedures
-understanding and remembering detailed instructions
-carrying out detailed instructions
-maintaining concentration and attention for extended periods
-performing activities within a schedule, maintaining regular attendance, being punctual
-sustaining an ordinary routine without special supervision
-working in coordination with or proximity to others without being distracted by them
-completing a normal workday and workweek and performing at a consistent pace

3

>        -accepting instructions and responding appropriately to criticism from supervisors
>        -getting along with co-workers or peers
>        -responding appropriately to changes in a work setting
>        -being aware of normal hazards and taking appropriate precautions
>        -traveling in unfamiliar places and using public transportation
>        -setting realistic goals and making plans independently of others.

(AR 238-39.)  As the apparent basis for these findings, Vick wrote at the end of the form, "Long years of anxiety, ETOH, & wide range of substance use." (AR 239.)  By June 30th, however, Vick's progress notes show that Brashear felt "fine," his anxiety was controlled, and he had not been binging on alcohol.  (AR 233.)  Her July 2008 progress notes state, "Anxiety - subj. better.  More flexible . . . ETOH not drinking at all."  (AR 229.)  In August 2008, Vick noted that Brashear had "Generalized Anxiety" and questioned whether he had undiagnosed bipolar disorder as well.  (AR 227.)

An administrative law judge (ALJ) conducted a hearing on Brashear's application for supplemental security income (SSI) in January 2009.  Brashear testified that he had not been drinking for about six months.  (AR 48.)  The last time he had too much to drink was sometime in 2006, before his last incarceration.  (AR 49.)  Brashear also testified about his PTSD symptoms, his desire to stay away from people, and his difficulty getting along with supervisors.  (AR 51-52.)  When asked if he was taking medicine for depression, Brashear stated, "No, not anymore." (AR 54.)  Although he previously took medicine for that, "[n]one of it worked." (*Id.*)  He was, however, still taking medication for anxiety.

A vocational expert (VE) also testified.  The ALJ asked the VE to consider a hypothetical younger individual with a high school education and no prior relevant work who has a marked impairment in social functioning—meaning that he "would be not . . . entirely isolated but it would be work which would require . . . getting instructions and then being on one's own for significant

portions of the work day or with the sort of supervision that would not be more than incidental to the work." (AR 56-57.)  Based on this hypothetical, the VE identified a few simple, unskilled jobs that Brashear could do.  (*Id.*)  Brashear's attorney then asked the VE to consider a different hypothetical—a moderate impairment in social function, meaning the inability to perform a job in which interaction with other people was a primary component, plus moderate limitations for maintaining attention and concentration for extended periods, for making simple work-related decisions, and for accepting instructions and responding appropriately to criticism from supervisors.  (AR 57-58.)  The VE found no jobs meeting this hypothetical.

The ALJ issued an unfavorable decision on April 27, 2009.  (AR 41.)  He determined that Brashear's only severe impairment is anxiety disorder with post-traumatic stress and social phobia.  The ALJ noted that Brashear had a history of depression, but stated that "[d]epression is not one of his current diagnoses." (AR 37.)  After finding that Brashear's anxiety did not meet or equal listing 12.06, the ALJ determined that he had an RFC to perform a full range of work at all exertional levels, but because he has moderate to marked limitations in social interaction, he should work in occupations in which social interaction is not a primary component of the job and in which supervision is minimal.  (AR 37-38.)  In making this assessment, the ALJ found Brashear not to be fully credible, granted Fink's opinion significant weight, and granted Vick's RFC assessment little weight.  (AR 39-40.) Finally, based on the VE's answer to his hypothetical, the ALJ determined that Brashear is not disabled.  (AR 41.)

Brashear appealed and provided the Appeals Council with additional progress notes from Vick, covering the period from September 2008 to April 2009.  On September 25th, Brashear reported feeling "very good" and relaxed.  (AR 30.)  A month later he was "very calm" and felt "great."  (AR 29.)  Vick stated that he was having an excellent response to his medication.  But by

March 16, 2009, Brashear reported being "really depressed" and was "withdrawing from people's company." (AR 27.) Vick noted that he had "Depression - severe" and decided to increase his medication. (*Id.*) A week later, Brashear requested discontinuation of the medicine because of its side effects. Vick diagnosed depression and suspected bipolar disorder, noting that he seemed better but could be "swinging from depression to mania." (AR 26.) In the last two progress notes, Vick continued to describe Vick as having anxiety and depression. (AR 20, 22.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Id.* I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.*

## RES JUDICATA AND COLLATERAL ESTOPPEL

Before filing his current application, Brashear filed an application for SSI benefits in September 2003. (AR 14.) In September 2004, an ALJ determined that he was disabled based on an RFC for less than simple, unskilled work on a sustained basis. (AR 17.) But the ALJ also found that Brashear's condition could be expected to improve with treatment. (AR 18.) Brashear was incarcerated in March 2006 and was released in June or July 2007. (AR 45, 78.) His SSI benefits were terminated because he was incarcerated for more than one year. *See* 20 C.F.R. §§ 416.1325, 416.1335. He filed the current application for SSI benefits on July 9, 2007, alleging an onset date

of September 1, 2003.  (AR 34, 78.)  Brashear argues that the ALJ was bound by the earlier RFC finding under the doctrines of res judicata or collateral estoppel.

Res judicata applies to social security cases when the agency has "made a previous determination or decision . . . on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action . . . ."  20 C.F.R. § 1457(c)(1); *see also Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009).  Moreover, Congress has provided that the Commissioner's findings "after a hearing shall be binding upon all individuals who were parties to such hearing [and that] [n]o findings of fact or decision of the Commissioner . . . shall be reviewed by any person, tribunal, or governmental agency . . . ."  42 U.S.C. § 405(h).  This statute embodies the doctrine of collateral estoppel, so that once an issue of fact has been decided, the decision may preclude relitigation of the same issue in a subsequent case. *Wilson v. Chater*, No. 96-6358, 1997 WL 218486, at *2 (10th Cir. May 1, 1997).  But "[c]ollateral estoppel applies only if the issue previously decided is identical to the one presented in the action in question."  *Id.* (citing *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995)). Passage of time may destroy the identity of issues essential to the operation of collateral estoppel. *Id.*  This is particularly true in social security cases because recurring applications for benefits generally deal with different periods of time.  *See id.*

Citing a Sixth Circuit case, Brashear argues that the ALJ was required to adhere to the previous ALJ's RFC finding absent evidence that his condition had improved.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).  In *Drummond*, the court held, "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Id.*

Other circuits have not followed the *Drummond* approach. For example, the Ninth Circuit considered a case in which a claimant successfully applied for SSI benefits in 1978 but her benefits were subsequently terminated for non-medical reasons. *See Warren v. Bowen*, 804 F.2d 1120, 1120-21 (9th Cir. 1986). When the claimant reapplied for SSI in 1981, she was found not disabled. *Id.* at 1121. The court held that res judicata did not apply to the second application because the issue in that application was whether the claimant was disabled in 1981, while the issue in the first application was whether she was disabled in 1978. *Id.*; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008) (citing *Warren* for the proposition that the Commissioner "is not required to presume that a previous disability has continued through a non-medically related termination of benefits"). Similarly, the Seventh Circuit rejected the argument that one ALJ's RFC finding established the claimant's RFC "forever more." *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996). The court held, "The first ALJ's finding was a binding determination with respect to Rucker's eligibility for disability benefits for that time period. It has no effect, however, on an application for disability benefits for a subsequent time period." *Id.* Although the Tenth Circuit has apparently not addressed this type of situation in a published case, it cited *Warren* and *Rucker* approvingly in *Wilson*, the unpublished case discussed above. *See Wilson*, 1997 WL 218486, at *2 & n.5; *cf. Caldwell v. Barnhart*, 100 F. App'x 724, 727 (10th Cir. 2004) (holding that suit for judicial review of decision regarding SSI benefits was barred by res judicata because the suit concerned eligibility for benefits for the same period involved in earlier suits). I therefore conclude that the *Drummond* approach does not apply in this circuit.

Brashear further contends that his current application and the previous application covered the same time period because the current application alleged an onset date of September 1, 2003. SSI benefits are not awarded retroactively; regardless of the onset date alleged by the claimant, the

earliest month for which the agency will pay benefits is the month following the month the application was filed. *See* 20 C.F.R. § 416.335. Accordingly, the period now under review began in August 2007, not September 2003. Because the current application concerns a different time period than the previous application, neither res judicata nor collateral estoppel apply.

Finally in regard to the previous application, Brashear argues that the ALJ should have at least considered the evidence that the first ALJ cited in finding him disabled. That evidence is not in the record. Before determining that a claimant is not disabled, the agency must develop the claimant's "complete medical history" for at least the twelve months preceding the month in which the application was filed unless there is a reason to believe that development of an earlier period is necessary. 20 C.F.R. § 416.912(d). The record includes medical evidence dating back to November 2004—well more than twelve months before the filing of the application—and the ALJ's decision states that he considered the "complete medical history consistent with 20 CFR 416.912(d)." (AR 34.) There is no reason to believe that development of the earlier period was necessary.

## EVALUATION OF VICK'S OPINION

Brashear disagrees with how the ALJ handled Vick's opinion. The ALJ stated that Vick "is not considered an acceptable medical source" because she is a nurse practitioner. (AR 39.) Nevertheless, he gave her mental RFC assessment "some consideration" because she had "followed" Brashear for the previous four years. (*Id.*) The ALJ then listed all of the marked limitations found by Vick, noting that she attributed these limitations to "'long years of anxiety, ETOH and wide range of substance abuse.'" (AR 40.) The ALJ pointed out that the assessment was prepared on June 16, 2008—a time when Brashear was binging. Two weeks later, Vick's progress notes described his anxiety as "controlled," and subsequent progress notes showed that his anxiety was improving. (*Id.*) The ALJ thus found Vick's assessment inconsistent with her own progress notes. He also

9

found it to be inconsistent with the record as a whole. Accordingly, he granted Vick's assessment "little weight." (*Id.*)

Brashear suggests that the ALJ was wrong in stating that Vick is not an acceptable medical source. Yet this characterization was correct. Under the social security regulations, nurse practitioners are "other sources," not "acceptable medical sources." 20 C.F.R. § 416.913(a), (d). "Other sources" cannot provide evidence to establish an impairment, but they can provide evidence regarding the severity of the impairment and regarding how it affects the claimant's ability to work. *Id.*; *see also* SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006) (explaining how opinions from other sources should be evaluated). The ALJ considered Vick's assessment for these purposes, but found it unconvincing in comparison with the record in general and her progress notes in particular. An examination of the record reveals that the other medical sources did not find all of the marked limitations found by Vick. It is also true, as indicated by the ALJ, that Vick's assessment occurred on the heels of two major drinking binges and that her progress notes immediately following the assessment suggest an improvement in Brashear's condition. The last progress notes considered by the ALJ were from August 2008. Brashear points out that the progress notes from September 2008 to April 2009 show that Brashear's condition did not improve permanently. But those notes, which were considered by the Appeals Council, do not necessarily support all of the marked limitations found by Vick.

Brashear additionally argues that the ALJ should have recontacted Vick "for clarification and additional information" "before disparaging her opinion." (Doc. 16 at 11.) The agency must recontact a medical source "when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20

10

C.F.R. § 416.912(e)(1).  "[I]t is not the rejection of the . . . opinion that triggers the duty to recontact . . . ."  *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).  Instead, it is the inadequacy of the evidence the ALJ receives from the source that triggers the duty.  *Id.*  In *White*, the Tenth Circuit rejected the argument that the ALJ should have recontacted a treating physician, reasoning as follows: "The ALJ believed the information he received from Dr. Fanning was 'adequate' for consideration; that is, it was not so incomplete that it could not be considered.  However, the ALJ also believed that the conclusion Dr. Fanning reached was wrong; that is, it was insufficiently supported by the record as a whole."  *Id.*  The same is true here.  The ALJ found Vick's report adequate enough to be considered, but concluded that it was not consistent with the rest of the record.  This distinguishes this case from the two cases cited by Brashear, in which the Tenth Circuit faulted ALJs for not seeking clarification when they found problems with the reports submitted by the sources.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *see also Palmer v. Barnhart*, No. 05-2372-JWL, 2006 WL 1581004, at *5 (D. Kan. June 6, 2006) (discerning "a distinction between a conflict in the record, on the one hand, and a conflict in the treating physician's report, on the other" and opining that this distinction explains why the Tenth Circuit reached opposite conclusions in *White* and *Robinson*).

### STEP THREE FINDING

At step three, the ALJ found that Brashear's mental impairments, considered singly and in combination, do not meet or medically equal the "B" criteria of listing 12.06.  Brashear argues that his "social phobia, anxiety, and depression meet or equal Listing 12.04."  (Doc. 16 at 5.)  This listing applies to affective disorders, including depression, and Brashear specifically argues that he meets the "A" criteria for depression.  Although he uses the word "anxiety," he does not argue that the ALJ

11

erred in finding that his condition does not meet or equal listing 12.06, which is the listing that applies to anxiety disorders. Strangely, Brashear also does not complain about, or even mention, the ALJ's failure to find that his depression is a severe impairment. Within his step two analysis, the ALJ stated that depression is not one of Brashear's current diagnoses.

Although the ALJ did not address listing 12.04, he specifically found that Brashear's mental impairments do not satisfy the B criteria for listing 12.06. To meet either listing, a claimant must satisfy both A criteria and B criteria. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1. The A criteria for the two listings are different, but the B criteria are the same. Therefore, regardless of whether his condition is properly characterized as depression, anxiety, or a combination of the two, Brashear cannot prevail without satisfying these B criteria.[1]

To satisfy the B criteria, a claimant's condition must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. *Id.* The ALJ found no evidence of episodes of decompensation of extended duration. He found only a mild limitation in activities of daily living. As the ALJ noted, Brashear cooks, cleans, does laundry, home repairs and yard work, and performs personal grooming. (*See* AR 137, 145-47, 187.) The ALJ found a moderate to marked limitation in social functioning, noting that Brashear can socialize with family members, but does not see friends and "has exhibited a great deal of difficulty in dealing with authority figures." (AR 38.) The ALJ found a mild limitation in concentration, persistence, and pace, noting that although Brashear

---

[1] As an alternative to proving both the A and B criteria, a claimant can meet listing 12.04 by establishing the "C" criteria. Brashear does not argue that his condition satisfies the C criteria.

has reported poor concentration, Fink found no more than a mild restriction in this area. These findings are supported by substantial evidence in the record.

Brashear asserts that the numerous marked limitations in Vick's assessment establish that he meets at least two of the B criteria. I have already concluded, however, that the ALJ did not err in discounting this assessment.

Brashear also cites his counseling notes from Mental Health Resources. Although these notes show that Brashear exhibited some symptoms of depression and anxiety, including poor concentration, they do not demonstrate the required marked limitations. (*See* AR 210-11.) Brashear points out that a Mental Health Resources doctor gave him a global assessment of functioning score (GAF) of 50. This score represents serious symptoms or serious impairment in social, occupational, or school functioning. *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000). Relying on *Berryhill v. Barnhart*, 64 F. App'x 196, 200 (10th Cir. 2003), Brashear argues that a GAF of 50 indicates an inability to keep a job. In *Berryhill*, however, the ALJ credited two references to a GAF of 60, which represents only moderate problems, while ignoring eight other GAF scores, over a three-year period, that were 50 or less. The court noted that these scores indicated the inability to keep a job. *See Berryhill*, 64 F. App'x at 200. The court remanded the case pursuant to the well-established principle that "'[a]lthough the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.'" *Id.* (quoting *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)). Here, the ALJ acknowledged the GAF of 50 and understood that it indicated serious impairment in social, occupational, or school functioning. (AR 36.) In other unpublished decisions, the Tenth Circuit has

made clear that a GAF of 50 may indicate problems that do not relate to the ability to hold a job. *See, e.g., Camp v. Barnhart*, 103 F. App'x 352, 354 (10th Cir. 2004).

Brashear next relies on the reports by Fink and Gabaldon. Although Fink had concerns about Brashear's ability to interact socially with others, particularly supervisors, he determined that Brashear's ability to sustain concentration is no more than mildly impaired. Fink did not note any impairment in activities of daily living. Gabaldon found no marked limitations.

Finally, Brashear cites the function report forms that he and his mother completed and in which they described Brashear's difficulty with memory and concentration. (AR 140-41, 148-50.) These reports do not show that Brashear's difficulties amount to marked limitations.

### EVALUATION OF GABALDON'S OPINION

Brashear argues that the ALJ failed to consider the opinion of Dr. Gabaldon. Gabaldon acted as a state agency reviewing psychologist for the Commissioner. An "administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources . . . ." *See* 20 C.F.R. § 416.927(f)(2)(ii).

The ALJ's decision does not expressly mention Gabaldon's findings. However, the moderate limitations found by Gabaldon were incorporated into the hypothetical that Brashear's attorney posed to the VE. At step five, the ALJ referred to counsel's hypothetical and stated that there was no evidence to support the hypothetical's limitations. The ALJ also stated that he had considered the entire record. The Commissioner argues that these statements indicate that the ALJ considered and rejected Gabaldon's opinion. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (stating that a reviewing court should ordinarily take the ALJ at his word when he says he has

considered all the evidence).  There are some peculiarities in the record that make it hard to accept this argument.

The ALJ posed two hypotheticals to the VE.  He first asked the VE to consider a claimant with "a moderate impairment in social function such that he would not be able to hold jobs of which a primary component was either action [sic—presumably "interaction"] with other people."  (AR 56.)  The VE listed several jobs that this hypothetical claimant could perform.  The ALJ then changed the hypothetical to give the claimant a marked social impairment, and the VE listed some jobs that this hypothetical claimant could perform.  When Brashear's attorney questioned the VE, he began by saying, "Let's add some moderate limitations to the first hypothetical.  That's the one with the moderate social limitation.  You recall that."  (AR 57.)  The VE indicated that he did recall the first hypothetical.  Counsel then stated, "[L]et's add to [the ALJ's] first hypothetical moderate limitation for maintaining attention and concentration for extended periods, to make simple work related decisions, to accept instructions and respond appropriately to criticism from supervisors.  Would those additional limitations have any adverse effect on the three jobs you identified?"  (AR 58.)  The VE responded, "When you take them together with the marked, there are characteristics that would be present in all jobs and if you had limitations in there in combination, I believe you would not be able to work."  (*Id.*)  The import of this answer is unclear.  The hypothetical presented by counsel did not include any marked limitations.

In his decision, the ALJ summarized the colloquy between the VE and Brashear's attorney as follows: "The VE was asked the effect of moderate social impairment plus moderate limitations in accepting instructions and responding to supervisors on the available jobs.  [The VE] replied that the additional limitations coupled with marked limitations in social interaction would eliminate all jobs.  The record does not support such limitations, however."  (AR 41.)  The ALJ did not seem to

15

notice that counsel's hypothetical did not include marked limitations in social interaction; rather, it included a moderate social impairment. The hypothetical's moderate limitation in accepting instructions and responding to supervisors is supported not only by Gabaldon's assessment, but by Fink's as well. The ALJ failed to acknowledge the two other moderate limitations in counsel's hypothetical, regarding the ability to make simple work-related decisions and to maintain attention and concentration for extended periods. Both of these limitations are supported by Gabaldon's assessment. (*See* AR 190-91.) Thus, it is unclear what the ALJ meant by saying that the record does not support the limitations in counsel's hypothetical. What is clear is that the ALJ never mentioned Gabaldon by name and never acknowledged his unique findings regarding simple decision-making and maintenance of attention and concentration.

Citing *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), the Commissioner asserts that the ALJ was not required to discuss every piece of evidence. The court held in *Clifton* that an ALJ need not "discuss every piece of evidence," but "[t]he record must demonstrate that the ALJ considered all of the evidence." 79 F.3d at 1009-10. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss . . . significantly probative evidence he rejects." *Id.* at 1110. Here, the ALJ failed to address Gabaldon's assessment or the limitations within that assessment. Because these limitations could eliminate all jobs, Gabaldon's assessment is significantly probative.[2]

---

[2] I note that there appear to be inconsistencies in Gabaldon's mental RFC and PRT forms. However, the ALJ, and not this Court, must provide the reasons for rejecting Gabaldon's findings. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (cautioning against supplying post hoc reasons to support an ALJ's seeming rejection of a medical opinion and remanding for the ALJ to explain his treatment of mental RFC evidence). And as discussed above, inconsistencies within a report trigger the ALJ's duty to seek clarification. *See McGoffin*, 288 F.3d at 1252.

16

## CONCLUSION AND RECOMMENDATION

The ALJ's failure to discuss the moderate limitations found by Dr. Gabaldon casts doubt on his RFC finding and requires a remand for the ALJ to reconsider his findings at steps four and five. It is not necessary to address Brashear's remaining arguments because they also relate to steps four and five.

I therefore recommend that Brashear's motion to reverse and remand be granted.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE